[No. B064852. Second Dist., Div. Five. Mar. 8, 1993.]

MISSION COMMUNITY HOSPITAL, Plaintiff and Appellant, v. KENNETH W. KIZER, as Director, etc., Defendant and Respondent.

## COUNSEL

Mitchell R. Miller for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton Holland III, Assistant Attorney General, John H. Sanders and Jonathan R. Davis, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**GRIGNON, J.**—Appellant Mission Community Hospital appeals from a judgment denying appellant's petition for writ of administrative mandamus seeking to compel respondent State of California, Department of Health Services to accept appellant's amended 1985 Medi-Cal cost report. Appellant contends respondent had a mandatory duty to accept the amended cost report. Alternatively, appellant contends, if respondent had discretion to accept the amended cost report, respondent abused its discretion in failing to accept the amended cost report. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Appellant is a participating hospital in California's Medi-Cal program. Health care providers participating in Medi-Cal are required to submit cost reports to respondent for the purpose of determining reasonable costs for services and establishing rates of payment.[1] Respondent has established procedures for auditing participants' cost reports. Appellant submitted a cost report for its fiscal year 1984, ending on October 31. After an audit, respondent proposed certain adjustments to the cost report including adjustments to the return on equity. Through administrative procedures, appellant appealed the adjustments. After an informal administrative hearing held on October 11, 1988, appellant and respondent agreed to settle their disputes relating to the 1984 fiscal year. This agreement was subsequently reflected in a written settlement agreement, dated August 10, 1989, resulting in a positive adjustment to the 1984 ending equity and the return on equity capital.[2] The settlement agreement recited that its purpose was to settle appellant's appeal of the 1984 audit adjustments and that it did not constitute a finding that the amended information was correct.[3]

On August 14, 1986, appellant filed a timely cost report for its fiscal year 1985, ending on October 31. The 1985 cost report reflected an opening equity which did not take into account the positive adjustment in the 1984 ending equity to which appellant and respondent had formally agreed in

---

[1]Reimbursement for hospital inpatient services provided to Medi-Cal recipients is the lesser of (1) the provider's customary charge, (2) allowable costs, or (3) an all-inclusive rate per discharge. (Cal. Code Regs., tit. 22, § 51536, subd. (a).)

[2]Apparently, ending equity and return on equity capital are items affecting a provider's final Medi-Cal reimbursement.

[3]The settlement agreement provided: "This agreement is entered into for the sole purpose of settling the disputes under appeal and does not constitute either an admission on [appellant's] part that the audit adjustments were proper or an admission on [respondent's] part that the audit adjustments were not proper."

August 1989.[4] Respondent issued its audit report for appellant's fiscal year 1985 on February 6, 1989. Respondent accepted the 1985 cost report as filed without audit.

On August 7, 1989, appellant requested that respondent reopen or amend appellant's 1985 cost report to reflect the 1984 positive adjustments. On October 2, 1989, respondent denied this request, as beyond the scope of the 1984 settlement and as untimely, in a letter which provided in part:

"The request to amend the return on equity computation is based upon a stipulated settlement agreement for the fiscal period ended October 31, 1984, which included an issue affecting ending equity capital. Stipulated agreements are applicable only to the period identified within the agreement. A review of the stipulated agreement indicates no reference to any required change for the cost report period ending October 31, 1985.

"In addition to the above, it should be noted that the submitted cost report was accepted as filed. The data submitted by the provider in the cost report was accepted as true and correct. Generally, when a cost report is accepted as filed, the decision is based upon a review of numerous factors which impact Medi-Cal settlement. Those factors include prior audit history, Medicare audit findings, completeness of the cost report, materiality, etc.

"A cost report should be filed in a manner consistent with regulations and policy governing its preparation, and is intended to be final. The report when accepted as final is not the result of an audit. Therefore, if a reopening of the audit report is required, it would open the entire report up to audit as the data submitted would constitute an amendment to the filed cost report."

Appellant filed an administrative appeal. On October 27, 1989, respondent notified appellant it was not entitled to a hearing on its appeal. However, appellant would be given an opportunity to show cause why the issue of the amended cost report should be heard. After a show cause hearing was held on December 19, 1989, an administrative law judge denied the appeal. Respondent adopted the decision of the administrative law judge as its final decision on May 10, 1990, and so notified appellant on May 21, 1990.

On November 9, 1990, appellant filed this timely petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. Appellant alleged damages in the amount of $15,000 in additional Medi-Cal reimbursement owing. In its petition, appellant contended: (1)

[4]In the normal course of events, the ending equity for one fiscal year would equal the opening equity for the subsequent fiscal year.

respondent is estopped from failing to correct the 1985 opening equity which resulted from respondent's error; (2) respondent's interpretation of its regulations is a change in policy which did not comply with the Administrative Procedure Act; (3) respondent denied appellant its substantive due process rights; (4) respondent's interpretation of its regulations is clearly erroneous; and (5) respondent erroneously applied the regulations to the facts of appellant's case. Respondent answered the petition. The petition was denied by judgment of the superior court and this appeal followed.

## DISCUSSION

### Statutory and Regulatory Framework

The Medi-Cal program is the California implementation of the federal Medicaid program which provides federal funds for state medical assistance programs. (Welf. & Inst. Code, § 14000 et seq.; *Palmdale Hospital Medical Center v. Department of Health Services* (1992) 8 Cal.App.4th 1306, 1312 [10 Cal.Rptr.2d 926]) Respondent is the state agency charged with administration of the Medi-Cal program. (Welf. & Inst. Code, § 10721; Cal. Code Regs., tit. 22, § 50004.)

Medi-Cal hospital providers submit to respondent annual cost reports of their expenses incurred in providing health care services to Medi-Cal recipients. Costs reports are used by respondent to determine a final settlement of that portion of a provider's costs related to Medi-Cal recipients and, thus, the amount of Medi-Cal reimbursement to which the provider is entitled. Respondent must either audit cost reports or accept them as filed within three years from the date of filing. (Welf. & Inst. Code, § 14170.) Section 14170 of the Welfare and Institutions Code (Stats. 1990, ch. 1329, § 32, eff. Sept. 26, 1990) provides in relevant part:

"Amounts paid for services provided to Medi-Cal beneficiaries shall be audited by the department in the manner and form prescribed by the department. . . . Cost reports and other data submitted by providers to a state agency for the purpose of determining reasonable costs for services or establishing rates of payment shall be considered true and correct unless audited or reviewed by the department within 18 months after July 1, 1969, the close of the period covered by the report, or after the date of submission of the original or amended report by the provider, whichever is later. Moreover, that cost report and other data for cost reporting periods beginning on January 1, 1972, and thereafter shall be considered true and correct unless audited or reviewed within three years after the close of the period covered by the report, or after the date of submission of the original or amended report by the provider, whichever is later."

Respondent is authorized to establish and has established appeal procedures for the audit process (Welf. & Inst. Code, § 14171; Cal. Code Regs., tit. 22, § 51016 et seq.). If a provider is dissatisfied with audit findings, the provider may appeal by filing a statement of disputed issues within 60 days of receipt of the written audit findings. (Cal. Code Regs., tit. 22, § 51022.) The first level of appeal may be an informal review before a hearing officer or auditor. (Cal. Code Regs., tit. 22, § 51023, subd. (a).) The results of the informal appeal are served on the provider in the form of a written report. (Cal. Code Regs., tit. 22, § 51023, subd. (e)(1).) The report is final unless the provider seeks a formal administrative hearing before an administrative law judge within 30 days of the issuance of the hearing officer's report. (Cal. Code Regs., tit. 22, §§ 51023, subd. (e)(2) and 51024.)

Amended cost reports may be filed for those fiscal years for which proceedings are still pending, that is, the cost report determination is not yet final. (Cal. Code Regs., tit. 22, § 51019, subd. (a).)[5]

*Federal Statutes and Regulations*

Medi*caid* (42 U.S.C. § 1396 et seq. [tit. XIX of the Social Security Act; "Grants to States For Medical Assistance Programs"]) enables states to furnish medical assistance, rehabilitation, and other services to families with dependent children and to aged, blind or disabled individuals who cannot afford such services. The program is a " 'cooperative federal-state health benefits assistance program,' [citation] under which the federal government reimburses states at least half the cost of providing health care. The program is optional, but once a state decides to participate it must comply with the federal government's requirements, listed at 42 U.S.C., § 1396a." (*Pottgieser v. Kizer* (9th Cir. 1990) 906 F.2d 1319, 1321; accord, *Citizens Action League v. Kizer* (9th Cir. 1989) 887 F.2d 1003, 1005; cf. *Palmdale Hospital Medical Center v. Department of Health Services, supra,* 8 Cal.App.4th at p. 1312.)

Medi*care* (42 U.S.C. § 1395 et seq. [tit. XVIII of the Social Security Act; "Health Insurance for Aged and Disabled"]) provides medical benefits to the aged and disabled. The program "is federally subsidized health insurance . . . [which] provides insurance for certain hospital and post-hospital services. [Citation.] [It also] provides additional insurance for physician and outpatient services." (*Pottgieser v. Kizer, supra,* 906 F.2d at p. 1320.) Parts of Medicare are not dependent upon financial need. The program is funded by both the federal government and individual premiums. (*Id.* at pp. 1320-1321.)

---

[5]Subsequent to the events herein, a number of the Welfare and Institutions Code sections were amended. (Stats. 1991, ch. 95, § 1, eff. June 30, 1991; Stats. 1992, ch. 1024, § 3.)

As a Medi*caid* program, California's Medi-Cal program must therefore conform to federal Medi*caid* statutes and regulations. (42 U.S.C. § 1369a (a)(4); 42 C.F.R. § 431.10; *Citizens Action League* v. *Kizer, supra,* 887 F.2d at p. 1005.) The federal Medi*care* statutes and regulations are not generally applicable to the state Medi-Cal regulatory scheme. (E.g., *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 216 [189 Cal.Rptr. 558].) California has chosen, however, to incorporate certain Medi*care* statutes and regulations into the Medi-Cal regulatory scheme. (E.g., Cal. Code Regs., tit. 22, § 51536.) California Code of Regulations, title 22, section 51536 provides in pertinent part:

"(a) Reimbursement for hospital inpatient services . . . shall be the lesser of the following for each hospital:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(2) Allowable costs determined in accordance with applicable Medicare standards and principles of reimbursement.

"(b) The following definitions are applicable to this section:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(4) Allowable cost means the hospital's allowable Medi-Cal cost permitted by applicable Medicare standards and principles of reimbursement, 42 CFR, Part 405 and HIM-15."

Under the federal Medicare procedures, a provider has three years from the issuance of a decision or determination to reopen that decision or determination. (42 U.S.C. § 1395x (v)(1)(A)(ii); 42 C.F.R. § 405.1885.)[6]

In *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments, supra,* 140 Cal.App.3d 197, this court considered the application of Medicare regulations under California Code of Regulations title 22, section 51536 to prejudgment interest. We stated at page 216:

"Title 22, section 51536 of the California [Code of Regulations] governs the determination of the reimbursable costs of providing medical services to patients and authorizes the use of applicable Medicare standards to determine those costs. However, the section does *not* incorporate *all* sections of 42 Code of Federal Regulations, part 405, as respondent suggests . . . Section 51536 limits the use of Medicare standards to those Medicare

---

[6]Section 405.1885 provides in pertinent part: "A determination . . . or a decision by a hearing officer . . . may be reopened with respect to findings on matters at issue in such determination or decision . . . on the motion of the provider affected by such determination or decision to revise any matter in issue at any such proceedings. Any such request to reopen must be made within 3 years of the date of the notice of the . . . decision or . . . the . . . intermediary determination."

sections which deal with the reimbursable costs of providing medical services. Prejudgment interest is not a cost relating to the provisions of medical service which may be reimbursed. California did not incorporate the Medicare regulations governing interest payments into its law and therefore interest is to be calculated in accordance with California law, and not the federal Medicare rules and regulations." (Italics in original.)

*Amended Cost Reports*

██ Appellant first contends respondent has specifically adopted that portion of the Medicare regulations which provides for the submission of amended cost reports within three years of the decision or determination. Appellant argues that since its amended cost report for fiscal year 1985 was submitted on August 7, 1989, it was submitted less than three years from respondent's February 6, 1989, determination in the audit report. Accordingly, appellant asserts the amended cost report was timely filed and respondent was required by law to accept it. We are not persuaded by this contention.

As we stated in *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments, supra,* 140 Cal.App.3d at page 216, California Code of Regulations section 51536 does not incorporate all Medicare regulations contained in part 405 of 42 Code of Federal Regulations. It has adopted only those portions relating to reimbursable costs. It has not adopted those portions of the Medicare regulations relating to the procedural aspects of cost reports, amended cost reports, audits and appeals. As noted, *ante,* respondent has adopted its own regulations concerning these procedural aspects.

Appellant next contends that even if respondent did not specifically adopt the Medicare procedural regulations, it is required under the doctrine of federal preemption to follow the federal rules. This is incorrect. As noted previously, respondent must comply with federal Medi*caid* statutes (see *Goleta Valley Community Hospital* v. *Department of Health Services* (1983) 149 Cal.App.3d 1124, 1129-1131 [197 Cal.Rptr. 294]) and regulations, however, federal Medi*care* regulations and statutes have no general applicability to California's Medi-Cal program. (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments, supra,* 140 Cal.App.3d at p. 216; *Citizens Action League* v. *Kizer, supra,* 887 F.2d at p. 1005.) Appellant does not contend there are any applicable Medicaid provisions governing the filing of amended cost reports.[7]

Appellant further contends that even if the federal Medicare regulations are not applicable to the submission of an amended cost report, under

---

[7]Title 42 Code of Federal Regulations, section 447.253(c) provides: "The [state] Medicaid agency must provide an appeals or exception procedure that allows individual providers an opportunity to submit additional evidence and receive prompt administrative review, with respect to such issues as the agency determines appropriate, of payment rates."

Welfare and Institutions Code section 14170 a provider has an unlimited right to file an amended cost report at any time and respondent is required to accept it. Alternatively, appellant contends that, at a minimum, an amended cost report may be filed under Welfare and Institutions Code section 14170 within three years of the date of the filing of the original cost report. These contentions have no merit. While it is true Welfare and Institutions Code section 14170 contemplates the filing of an amended cost report and requires respondent to conduct any audit within three years, the section sets forth no requirements for the timely submission of such amended cost reports. It simply contemplates that such amendments are to be permitted. Respondent has by regulation adopted a time frame for the submission of amended cost reports. By California Code of Regulations title 22, section 51019, respondent has provided that amended cost reports may be submitted only during the period before the cost report determination becomes final.

■ An administrative agency has the power to adopt regulations to effectuate the statutory purpose, provided the regulations are not in conflict with applicable statutes. (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032]; *Nicolle-Wagner* v. *Deukmejian* (1991) 230 Cal.App.3d 652, 658 [281 Cal.Rptr. 494].) **(3)** We defer to the technical skill and expertise of the administrative agency in interpreting the statutes. (*Ibid.*) ■ Welfare and Institutions Code section 14170 contemplates the submission of amended cost reports; it provides that amounts paid for services to Medi-Cal recipients shall be audited by respondent in the manner and form prescribed by respondent. Welfare and Institutions Code section 14171 empowers respondent to establish administrative appeal processes to review audits of original and amended cost reports.[8] California Code of Regulations section 51019 provides a reasonable regulation for the timely submission of amended cost reports and is not in conflict with Welfare and Institutions Code section 14170. Accordingly, California Code of Regulations section 51019 is entitled to our deference.[9]

In this case, appellant submitted an amended cost report on August 7, 1989. On February 6, 1989, respondent had accepted appellant's 1985 cost report as final. Therefore, at the time appellant submitted its amended report, the 1985 cost report determination had become final and proceedings were

---

[8]Welfare and Institutions Code section 14171, subdivision (a) provides: "The director shall . . . establish administrative appeal process[es] to review grievances or complaints arising from the findings of an audit or examination made pursuant to [Welfare and Institutions Code section] . . . 14170."

[9]Appellant's assertion of an unlimited time frame for the filing of amended cost reports is an unreasonable statutory interpretation. To the extent respondent contends that its regulation does not permit amended cost reports to be submitted unless an audit proceeding is pending, we conclude such interpretation is also unreasonable.

no longer pending for fiscal year 1985. Thus, the amended cost report was not timely submitted and respondent had no duty to accept it.

Assuming respondent had the discretion to accept appellant's untimely amended cost report, we conclude respondent did not abuse its discretion in rejecting the submission. We note that there was no injustice to appellant. Appellant knew in October of 1988, there would be a substantial increase in its 1984 ending equity which could result in a substantial increase in its opening equity for 1985. Appellant had ample time to submit an amended cost report prior to February 1989, when the 1985 cost report determination became final. Moreover, it appears from the settlement agreement itself that the 1984 settlement was intended to compromise disputes in 1984 and not to affect subsequent years. Appellant presented no evidence refuting the plain language of the settlement agreement.

■ Appellant also contends respondent did not comply with the Administrative Procedure Act (Gov. Code, § 11340 et seq.) when in 1989, it allegedly changed its administrative policy concerning the submission of amended cost reports. Appellant did not present any evidence on this issue at the administrative level or in the trial court. Appellant has attached as part of its opening brief certain documents relating to this alleged change in policy. It may not attempt to present such evidence for the first time on appeal. (*City of Walnut Creek* v. *County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1019-1020 [162 Cal.Rptr. 224]; cf. *Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 576 [2 Cal.Rptr.2d 249].)[10]

■ Finally, appellant contends respondent is estopped from refusing to correct the 1985 opening equity by its error in failing to carry forward the 1984 ending equity to subsequent years. This contention is wholly without merit. The record reflects no such error on the part of respondent. It reflects appellant's submission of a cost report for 1984, respondent's proposed audit adjustments of that report, appellant's appeal of the proposed adjustments, and the parties' settlement of the disputes with the express understanding that the purpose of the settlement was to resolve the disputes in issue with neither side admitting error. If the parties had agreed to amend cost reports for subsequent years, the agreement could have easily so stated. Respondent's agreement to settle the 1984 dispute does not constitute an estoppel with respect to 1985.

---

[10]Anecdotal evidence was presented by appellant in the administrative hearing that respondent may have occasionally accepted untimely amended cost reports from Medi-Cal providers in the past. However, there was no evidence presented concerning the existence of a policy or a change in the policy. Moreover, evidence was presented that respondent did not have a pre-1989 policy to accept untimely amended cost reports.

## Disposition

The judgment is affirmed. The parties are to bear their own costs on appeal.

Turner, P. J., and Armstrong, J., concurred.