[No. B079268. Second Dist., Div. Two. Feb. 9, 1995.]

INTERCOMMUNITY MEDICAL CENTER, Plaintiff and Appellant, v. S. KIMBERLY BELSHÉ, as Director, etc., et al., Defendants and Respondents.

COUNSEL

Hooper, Lundy & Bookman and Patric Hooper for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Richard T. Waldow, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**GATES, Acting P. J.**—Intercommunity Medical Center (IMC) appeals from the denial of its petition for writ of mandate under section 1094.5 of the Code of Civil Procedure, in which it sought review of an administrative decision of the State Department of Health Services (the Department) disallowing IMC's cost reporting of its psychiatric unit as a separate cost entity. The Department based its decision upon two principal grounds: (1) IMC had failed to obtain prior authorization for treating its psychiatric unit as a separate cost entity; and (2) the psychiatric unit in any event would not qualify for such treatment because it provided only short-term acute psychiatric care. IMC challenges each of those grounds for denying separate cost entity treatment for its psychiatric unit.

IMC is a general acute-care hospital licensed and certified by the Department to provide health care services to eligible beneficiaries of the Medi-Cal program. The costs of providing hospital care to Medi-Cal patients throughout the hospital are reimbursed on a "reasonable cost" basis, as defined and limited by applicable regulations.

IMC reported its costs respecting its psychiatric unit as a separate cost entity for the fiscal periods in question. Upon audit of its 1987 and 1988 Medi-Cal cost reports, the Department disallowed IMC's treatment of its short-term psychiatric unit as a separate cost entity. In determining the amounts to be reimbursed, the Department instead averaged the costs of the psychiatric unit with those of the medical/surgical area of the hospital. Because the per diem cost of services in the psychiatric unit was on average higher than in the medical/surgical center, the reclassification resulted in a reduced reimbursement to IMC.

IMC challenged the audit adjustments in an administrative proceeding. The administrative law judge issued a proposed decision upholding the adjustments, which was adopted by the Department.

IMC sought a writ of mandate in the trial court. (Welf. & Inst. Code, § 14171, subd. (k); Code Civ. Proc., § 1094.5.) The trial court denied IMC's

petition, concluding that the Department "properly interpreted the applicable regulations pertaining to separate cost entities."

IMC moved for new trial, asserting that it had obtained newly discovered evidence from another case (San Fernando Community Hospital v. Coye et al. (Super. Ct. Sacramento County, 1993, No. 370315)) establishing that the Department had no procedure for processing applications for separate cost center treatment. The trial court denied IMC's motion for new trial, and this appeal followed.

■ Our review of the agency findings is governed by the substantial evidence test. (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 207 [189 Cal.Rptr. 558].) IMC asserts that it does not challenge the Department's findings of fact. Where no challenge to the factual findings is made, the appellate court need only determine whether the Department's ruling was so arbitrary and capricious as to amount to an abuse of discretion. (See *American Medical Internat., Inc.* v. *Myers* (1985) 170 Cal.App.3d 1115, 1120 [216 Cal.Rptr. 810].)

■ An agency's interpretation of its own regulations is given great weight. (See *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161].) The parties dispute whether certain provisions in issue, section 2336 et seq. of a Medicare manual (the provider reimbursement manual or PRM) adopted by the Department but promulgated by the Health Care Financing Administration (HCFA) are the Department's own regulations. Title 22, section 51536, subdivision (b)(4) of the California Code of Regulations defines allowable Medi-Cal hospital costs as those "permitted by applicable Medicare standards and principles of reimbursement, 42 CFR, Part 405 [now part 413] and HIM-15 [the PRM]."

The Department administers Medi-Cal, California's Medicaid program, which is a federally assisted health insurance program for the poor. Medicare, administered by the HCFA, is the federal health insurance program for the aged and disabled. (See *Mercy Hospital & Medical Center* v. *Department of Health Services* (1981) 115 Cal.App.3d 270, 274, fn.1 [171 Cal.Rptr. 374].) ■ Medicare guidelines are not generally applicable to the Medi-Cal program. (*Mission Community Hospital* v. *Kizer* (1993) 13 Cal.App.4th 1683, 1689-1690 [17 Cal.Rptr.2d 303].)

Medicare previously reimbursed providers on the basis of the reasonable cost system still utilized by Medi-Cal, but adopted a prospective payment system effective in 1983. (42 C.F.R. § 412 (1993).) A letter from an HCFA official submitted by IMC in the trial court affirms that HCFA no longer

applies PRM section 2336 to hospitals for purposes of determining Medicare payment. Since the Department implements the guidelines as its own regulations, its interpretation is entitled to deference, particularly since the regulations involve complex accounting methods used to distribute Medi-Cal funds. By contrast *AMISUB (PSL)* v. *State of Colo. DSS* (10th Cir. 1989) 879 F.2d 789, relied upon by IMC, is a case testing whether a state Medicaid agency is in compliance with the federal Medicaid Act.

Subdivision B of section 2336 of the PRM provides in pertinent part, ". . . if the hospital feels that some of its beds should be excluded from its participation agreement or that separate cost entities should be established, the hospital should request that this be done by letter to the regional office through the fiscal intermediary."

PRM section 2336.1 provides patient service criteria for establishing separate cost entities. Subparagraph A of section 2336.1 of the PRM provides: "*Types of Service.* Separate cost entities can only be established for components providing clearly different services; e.g., short-term acute, long-term medical, long-term psychiatric, or long-term tuberculosis. Those services generally provided by short-term acute hospitals (intensive care, self care, and similar services) may not be established as separate cost facilities, nor may the customary separate clinical departments of a short-term hospital (pediatrics, obstetric, etc.) be set up as separate cost entities." PRM section 2336.2 states accounting criteria, and section 2336.3 sets out the effective date of separate cost entity status, i.e., the beginning of a cost reporting period following receipt of approval for such status, after such approval has been requested.

With regard to prior approval, we agree with the Department that the procedure would be useful both to the Department and the providers. It would enable the Department to more equitably administer the reimbursement of funds to providers, and would give providers the benefit of greater certainty. Moreover, on the basis of the evidence submitted in the administrative hearing (see *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments, supra,* 140 Cal.App.3d at p. 208, which limits review to the record developed in the administrative hearing), we are inclined to uphold the Department's interpretation of PRM section 2336.1 as requiring prior approval.

At the administrative hearing level the parties appear to have assumed the existence of a Department procedure for processing requests for prior approval. A Department witness testified that if prior approval had been granted, he would have expected to find in the record "[s]omething written

requesting it and something from the Department stating that it was accepted. And I believe under a SubProvider, they normally get assigned a different Provider number." When asked if he was familiar with PRM section 2336 and with "the prior authorization requirement," IMC's expert answered in the affirmative.

We also agree with the Department that Medicare treatment of the unit as a separate cost center would not satisfy the requirement because Medicare no longer reimburses on the basis of reasonable cost. As noted above, IMC submitted a letter in the trial court from a Medicare official who stated that HCFA "is no longer applying section 2336 to hospitals for purposes of determining Medicare payment." According to Department testimony in the administrative hearing, Medicare recognized IMC's psychiatric unit as an excluded unit only for purposes of its prospective payment system, not due to any application of PRM section 2336.

IMC, however, refers us to material which, broadly construed, might show that the Department has abandoned the requirement or, alternatively, has not had in place procedures for processing requests for prior approval. The materials offered to support IMC's motion for new trial include the trial court's tentative decision in San Fernando Community Hospital v. Coye et al., *supra*, No. 370315, dated July 7, 1993, and discovery responses in that action which state that the Department has no "written procedures, policies, or procedural or substantive standards" for prior approval "other than those published in regulation, specifically HIM-15 section 2336 et seq." The superior court decision states, "The Court concludes that under this regulatory scheme, petitioner could not reasonably have been expected to realize that DHS required it to obtain prior written approval from the Medi-Cal program in order to claim 'single cost entity' status."

IMC attached to its appellant's opening brief a proposed administrative decision in Presbyterian Intercommunity Hospital, Audit Appeal No. HA3-0989-002D (Nov. 21, 1991). There the administrative law judge rejected the Department's contentions regarding prior approval but held that its interpretation precluding short-term psychiatric units from receiving separate cost entity status was correct. IMC attached to its reply brief a copy of a proposed decision in University of California Irvine Medical Center, Audit Appeal Nos. HA3-0689-131D and HA3-0690-171D (Oct. 19, 1994), which is consistent with the administrative decision herein on the issue of short-term psychiatric units and does not address the prior approval issue. It also attached a copy of a proposed decision in San Fernando Community Hospital, Audit Appeal Nos. HA0-0687-311C, HA0-0688-318C, and HA1-0689-365C (Sept. 30, 1994). There, the administrative law judge determined that a short-term psychiatric unit could be treated as a separate cost entity.

While we are not bound by the superior court decision and the additional materials were not included in the administrative record, we are nevertheless reluctant to make any broad pronouncements regarding the prior approval requirement in light of the questions they raise. Moreover, no purpose would be served by our returning the case to the administrative forum, since the Department's ruling is supported on other grounds. We therefore decline to reach IMC's contention that the prior approval requirement is not an appropriate basis for denying separate cost entity treatment.

■ IMC's second contention, that separate cost entity treatment for its psychiatric unit is permitted under PRM section 2336 even though it provides only short-term care, fails. Subparagraph A of section 2336.1 of the PRM, quoted above, lists as appropriate for separate cost entity treatment, "components providing clearly different services; e.g., short-term acute, long-term medical, long-term psychiatric, or long-term tuberculosis." The Department interprets the regulation as excluding short-term psychiatric care.

The Department's interpretation is reasonable. The guideline is an ejusdem generis regulation, limiting coverage to units similar to those enumerated. (See *John Muir Memorial Hospital, Inc.* v. *Schweiker* (9th Cir. 1982) 664 F.2d 1337, 1338.) Since it lists "long-term psychiatric" as a department which might properly be considered as providing "clearly different services," it inferentially excludes short-term psychiatric care.

In addition, IMC, as a short-term acute hospital, is precluded from setting up as a separate cost entity its "customary separate clinical departments." The Department urges that the short-term psychiatric unit, like a pediatrics or obstetrics unit, may not be separated out under this guideline because level of service and length of stay, rather than clinical difference, is the determining factor.

IMC relies upon two letters from federal HCFA officials stating their opinions that short-term psychiatric units might qualify for separate cost center status under PRM section 2336. Those letters, however, are not formal HCFA rulings, and HCFA, in any event, no longer applies section 2336 as a reimbursement guide. Thus, the opinions would appear to be merely advisory. The fact that the Department here could well have reasonably decided this close question in a contrary manner does not cause its decision to be arbitrary or capricious.

Appellant also asserts that the long-term/short-term distinction is inconsistent with the Department's past policy and practice. It attached to its

opening brief an administrative decision in which the administrative law judge allowed separate unit treatment for a short-term psychiatric unit. (Highland General Hospital, Audit Appeal No. HA4-0679-703.) Highland General Hospital involved a separate issue, however, duplicate payment through the Short-Doyle and Medi-Cal reimbursement mechanisms and does not apply the criteria here in issue.

■ IMC urges that the Medicare statute (42 U.S.C. § 1395x(v)(1)(A)), which PRM section 2336 is intended to implement, requires that Medicare (and Medi-Cal) reimburse a provider for its allowable costs in proportion to the services furnished by the provider. That goal, however, need not be met exactly in every instance. (See *Vista Hill Foundation, Inc.* v. *Heckler* (9th Cir. 1985) 767 F.2d 556, 564-566 ["The Secretary has broad discretion under the Act to define 'reasonable costs' and to determine how most efficiently to estimate and allocate costs so that the costs of the Medicare system are not borne by non-Medicare patients and vic versa. [Citation.] It is not for us to decide whether the Secretary's regulations constitute the best method of accomplishing this goal [citation]. . . . [¶] The Secretary has chosen to follow a system that is based on the assumption that disparity of usage in particular categories of services balances out over the long haul."].) IMC has not shown that the Department's decision was arbitrary or capricious.

The judgment appealed from is affirmed.

Fukuto, J., and Nott, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 1995.