[No. B172890. Second Dist., Div. Five. Dec. 22, 2004.]

SANDRA SHEWRY, as Director, etc., Plaintiff and Respondent, v. BRENDA ARNOLD, Defendant and Appellant.

## COUNSEL

Beverly Hills Law Associates, Steven M. Losh and Angelica M. Leon for Defendant and Appellant.

Bill Lockyer, Attorney General, Doug Press, Assistant Attorney General, John H. Sanders and Jennifer M. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GRIGNON, J.—** Defendant and appellant Brenda Arnold appeals from a summary judgment in favor of Diana M. Bontá, former Director of the

Department of Health Services for the State of California (the Department) in this action seeking reimbursement from a special needs trust for health services provided by Medi-Cal to the beneficiary of the trust. Arnold contends the Department may not be reimbursed from the assets of a special needs trust upon the beneficiary's death if the sole recipient of the beneficiary's estate is an adult disabled child. We hold that upon the death of the beneficiary of a special needs trust, any remaining trust assets are treated as part of the beneficiary's estate pursuant to Probate Code section 3605, subdivision (b), and trust assets distributed solely to an adult disabled child are exempt from Medi-Cal reimbursement claims pursuant to Welfare and Institutions Code section 14009.5, subdivision (b)(2)(C). We reverse and order entry of judgment in favor of Arnold.

## FACTS AND PROCEDURAL BACKGROUND

Etoria Hatcher was born on March 5, 1935. Her sole living child is Arnold, who is permanently and totally disabled. Arnold has received disability benefits from Social Security since 1986 and is a disabled person as defined in section 1614(a)(3)(A) of the Social Security Act and title 42 of the United States Code, section 1382c(a)(3)(A). Arnold was appointed as conservator of Hatcher's person and estate.

Hatcher intended to apply for Medi-Cal benefits. An individual's entitlement to Medi-Cal benefits depends on the financial resources available to her. Apparently, Hatcher became entitled to receive proceeds from the settlement of a lawsuit. If the settlement proceeds became part of the conservatorship estate, Hatcher would not be eligible for Medi-Cal benefits. Therefore, Arnold, as Hatcher's conservator, petitioned the probate court for approval to create a special needs trust pursuant to Probate Code section 3600 et seq. A special needs trust restricts the trustee's ability to use the trust assets and allows the beneficiary to maintain eligibility for certain needs-based government benefits, such as Medi-Cal. On December 22, 1997, the probate court approved the creation of the trust to be funded with $450,000. The probate court concluded that an irrevocable special needs trust was in Hatcher's best interest and approved Arnold as the settlor and trustee of the trust. The stated intent of the trust was to supplement any benefits that Hatcher might be eligible to receive through government assistance programs. Hatcher was the primary beneficiary of the trust, but had no power to direct Arnold to make distributions. The trust provided that it would terminate upon the depletion of the assets or the death of the beneficiary. If terminated on the death of the beneficiary, the remaining principal and income was to be distributed to Arnold as the only living child of the beneficiary. "However, pursuant to Probate Code section 3604, at the time of termination of the Trust, either by death or depletion of assets, the Trustee shall give notice to

the State Department of Health Services, the State Department of Mental Health, the State Department of Developmental Services, and any county or city in this state. All valid liens in favor of these agencies shall first be satisfied before any distribution of remaining [principal] or income is made, even to the extent of exhausting any remaining [principal] or income."

In January 1999, Hatcher applied for the Medi-Cal program. The Department approved the application based on the understanding that the trust would reimburse the Department from the remaining trust assets after Hatcher's death or the trust's termination. The Department provided retroactive coverage to July 1997. From October 1, 1997, through September 20, 1999, the Department paid $90,043.70 through the Medi-Cal program for health care services provided to Hatcher. Hatcher died on September 20, 1999. Arnold withdrew $183,000 from the trust assets on December 13, 1999, and $101,727.23 from the trust assets on October 16, 2000, leaving a balance of $2.31. Arnold did not notify the Department of Hatcher's death.

The Department discovered Hatcher's death as a result of a routine periodic check of the Medi-Cal Eligibility Data System on October 9, 2001. On November 9, 2001, the Department wrote to Arnold and demanded $90,043.70 from the remainder of the trust. Arnold wrote to the Department and explained that she was Hatcher's sole surviving child and was disabled, and therefore, any property distributed to her was exempt from reimbursement claims. She refused to pay the Department's claim.

On December 23, 2002, the Department filed a complaint against Arnold, as the recipient of property from a Medi-Cal beneficiary, to enforce and collect money due on a Medi-Cal creditor's claim pursuant to Probate Code section 3605. On August 13, 2003, the Department filed a motion for summary judgment. On August 15, 2003, Arnold filed a motion for summary judgment. A hearing was held. On December 15, 2003, the trial court entered judgment in favor of the Department and ordered Arnold to pay $90,043.70, plus interest and costs, to the Department. Arnold filed a timely notice of appeal.

## DISCUSSION

*Standard of Review*

■ A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. (*Salazar v. Upland Police Dept.* (2004) 116 Cal.App.4th 934, 941 [11 Cal.Rptr.3d 22].) ■ We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35

Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

*Statutory Interpretation*

■ "In interpreting a statute, we apply the usual rules of statutory construction. 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, " 'The court turns first to the words themselves for the answer.' " [Citations.] "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . ." ' [Citation.] We give the language of the statute its 'usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].)

*Medicaid*

■ "Medi*caid* (42 U.S.C., § 1396 et seq. [tit. XIX of the Social Security Act; 'Grants to States For Medical Assistance Programs'])" is a federal program that enables states to provide medical assistance to impoverished individuals who are aged, blind, disabled, or families with dependent children. (*Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1688 [17 Cal.Rptr.2d 303].) " ' "The program is optional, but once a state decides to participate it must comply with the federal government's requirements, listed at 42 U.S.C. § 1396a." [Citations.]' " (*Ibid.*) "The Medi-Cal program is the California implementation of the federal Medicaid program . . . . [The Department] is the state agency charged with administration of the Medi-Cal program." (*Id.* at p. 1687.) "As a Medi*caid* program, California's Medi-Cal program must therefore conform to federal Medi*caid* statutes and regulations. [Citation.]" (*Id.* at p. 1689.)

■ State plans for medical assistance must comply with the federal Medicaid provisions "with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain

trusts." (42 U.S.C., § 1396a(a)(18).) Title 42 of the United States Code section 1396p(d)(1) governs the treatment of trust assets for purposes of determining an individual's eligibility for benefits under a state plan. In general, trust assets are considered in determining an individual's income and asset eligibility for benefits. However, this eligibility subsection does not apply to a trust established for the benefit of a disabled individual under age 65, such as a special needs trust, "if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan . . . ." (42 U.S.C., § 1396p(d)(4)(A).) ▌ Title 42 of the United States Code section 1396p(b)(1) provides that the state must seek adjustment or recovery of any medical assistance paid on behalf of certain individuals from the individual's estate. The term "estate" includes all assets that are part of the individual's estate under state probate law, as well as any other assets in which the individual had an interest at the time of death that the state opts to include for the purposes of these provisions. (42 U.S.C., § 1396p(b)(4).) However, title 42 of the United States Code section 1396p(b)(2)(A) provides that any adjustment or recovery under subparagraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time when he has no surviving child who is under age 21 or is blind or permanently and totally disabled.

*Special Needs Trust*

▌ "A special needs trust is a trust that is intended to allow the beneficiary to continue to maintain eligibility for certain needs-based government benefits, such as S.S.I. or Medi-Cal." (Super. Ct. L.A. County, Local Rules, rule 10.186.1.) Under California law, when a court approves a settlement of an action to which an incompetent person is a party, the conservator may petition the court for an order that money owed to the incompetent person pursuant to the settlement not become part of the conservatorship estate, but instead be paid to a special needs trust established under Probate Code section 3604 for the benefit of the incompetent person. (Prob. Code, § 3602.) The court must review and approve the terms of the special needs trust to ensure that they satisfy requirements of Probate Code section 3604. Under Probate Code section 3604, subdivision (b), a special needs trust may be established and continued only if the court determines that the incompetent person has a disability that substantially impairs the individual's ability to care for himself or herself and constitutes a substantial handicap, the incompetent person is likely to have special needs that will not be met without the trust, and the money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the incompetent person.

Probate Code section 3605 provides in pertinent part: "(b) While the special needs trust is in existence, the statute of limitations otherwise applicable to claims of the State Department of Health Services, the State Department of Mental Health, the State Department of Developmental Services, and any county or city and county in this state is tolled. Notwithstanding any provision in the trust instrument, at the death of the special needs trust beneficiary or on termination of the trust, the trust property is subject to claims of the State Department of Health Services . . . to the extent authorized by law as if the trust property is owned by the beneficiary or is part of the beneficiary's estate."

The Law Revision Commission comment to Probate Code section 3605 states in pertinent part: "Section 3605 permits reimbursement from special needs trusts established under Section 3604, but only on termination of the trust. . . . [¶] . . . [¶] [A]ll reimbursement rights of public agencies are deferred while the special needs trust is in existence. On the death of the special needs trust beneficiary or on termination of the trust, trust property may become subject to reimbursement claims under federal or state law. [(See, e.g., 42 U.S.C. § 1396p(b)(1)(B) [Medicaid]; Welf. & Inst. Code, §§ 7276, 7513–7513.2 [state hospital costs], 14009.5 [Medi-Cal], 17109, 17403 [counties]).] For this purpose and only this purpose, the trust property is treated as the beneficiary's property or as property of the beneficiary's estate. [¶] On termination of a special needs trust, the normal rules governing distribution of property are applicable, subject to the claims reimbursement provisions of this section. See Section 15410 (disposition of property on trust termination). [22 Cal. Law Rev. Comm. Reports 989 (1992).]" (Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2005 supp.) foll. § 3605, p. 42.)

*Medi-Cal Reimbursement*

Welfare and Institutions Code section 14009.5 provides for Medi-Cal reimbursement from decedents' estates in pertinent part as follows: "(a) Notwithstanding any other provision of this chapter, the department shall claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received or the value of the property received by any recipient from the decedent by distribution or survival, whichever is less. [¶] (b) The department may not claim in any of the following circumstances: [¶] (1) The decedent was under 55 when services were received, except in the case of an individual who had been an inpatient in a nursing facility. [¶] (2) Where there is any of the following: [¶] (A) A surviving spouse during his or her lifetime. However, upon the death of a surviving spouse, the department shall make a claim against the estate of the surviving spouse, or against any recipient of property from the surviving spouse obtained by distribution or survival . . . . [¶] (B) A surviving child

who is under age 21. [¶] (C) A surviving child who is blind or permanently and totally disabled, within the meaning of Section 1614 of the federal Social Security Act (42 U.S.C.A. Sec. 1382c). [¶] . . . [¶] (c)(1) The department shall waive its claim, in whole or in part, if it determines that enforcement of the claim would result in substantial hardship to other dependents, heirs, or survivors of the individual against whose estate the claim exists. [¶] (2) The department shall notify individuals of the waiver provision and the opportunity for a hearing to establish that a waiver should be granted."

*Adult Disabled Child*

This case involves the interplay of the federal and state statutory provisions relating to special needs trusts and those relating to Medi-Cal reimbursement. Arnold contends that after Hatcher's death, the remaining assets of the special needs trust were treated as part of Hatcher's estate, and the property of an estate that is distributed to a decedent's adult disabled child is exempt from Medi-Cal reimbursement claims. The Department responds that Medi-Cal is required to comply with the federal Medicaid provisions that require a state to be reimbursed from the remaining assets of a decedent's special needs trust. The Department argues that the assets of a special needs trust may be disregarded for purposes of Medi-Cal eligibility only if the state is assured of reimbursement from any remaining assets.

■■■ The federal Medicaid provisions require qualifying state plans for medical assistance to comply with federal statutes relating to eligibility and reimbursement. Those federal Medicaid provisions provide that the assets of special needs trusts are to be disregarded in determining an individual's eligibility for Medicaid (Medi-Cal) benefits. However, such assets may be disregarded only if the state is entitled to be reimbursed for benefits paid, from any assets remaining in the special needs trust upon the death of the beneficiary. These trust provisions are found in subdivision (d) of title 42 of the United States Code section 1396p.

■■■ Subdivision (b) of title 42 of the United States Code section 1396p provides in general for reimbursement to a state of medical assistance paid on behalf of an individual. Reimbursement from the estate of a deceased individual for such medical assistance payments may not be obtained from an adult disabled child of the decedent.

The Department argues that subdivision (d) of title 42 United States Code section 1396p governs reimbursement from special needs trust assets. The Department argues further that subdivision (d) includes no express provisions exempting from reimbursement distributions to adult disabled children of a

beneficiary. Accordingly, the Department asserts that the exemption for assets distributed to an adult disabled child in subdivision (b) is not applicable to special needs trust assets.

■ This argument is not persuasive. The provisions of subdivision (d) relate to eligibility for medical assistance. In determining an individual's eligibility for state medical assistance, the assets of a special needs trust are to be disregarded if the state is entitled to be reimbursed from the trust. The nature of that right to reimbursement is not set forth in subdivision (d). Reimbursement provisions are found in subdivision (b), which expressly excludes assets distributed to an adult disabled child. These reimbursement provisions are generally applicable to all reimbursement for medical assistance payments. The Department has put forth no persuasive argument that reimbursement from special needs trusts should be treated differently than other reimbursements. We conclude such trusts should not be treated differently. Thus, qualification of a state plan for medical assistance under the federal Medicaid provisions does not require reimbursement from special needs trust assets distributed to an adult disabled child.

■ The analysis is similar under California law. The assets of a special needs trust are disregarded in determining an individual's eligibility for Medi-Cal benefits. Upon the death of the beneficiary of a special needs trust, any remaining assets in the trust are treated as part of the beneficiary's estate for purposes of Medi-Cal reimbursement. (Prob. Code, § 3605, subd. (b).) The Department may not seek Medi-Cal reimbursement from the estate of a decedent if there is a surviving child who is permanently and totally disabled. (Welf. & Inst. Code, § 14009.5, subd. (b)(2)(C).)

The clear and unambiguous language of the special needs trust and Medi-Cal reimbursement statutes establishes that upon the death of a special needs trust beneficiary, any remaining trust assets are treated as part of the beneficiary's estate and distributions from the estate to the decedent's adult disabled child are exempt from the Department's reimbursement claims. The clear language of the statutes is also supported by the comment of the Law Revision Commission to Probate Code section 3605. The comment notes as follows. Reimbursement rights of public agencies to the assets of a special needs trust are deferred during the existence of the trust. Upon the death of the beneficiary, any remaining assets of the trust may become subject to Medi-Cal reimbursement claims under Welfare and Institutions Code section 14009.5. For purposes of determining the Department's right to Medi-Cal reimbursement under Welfare and Institutions Code section 14009.5, from the remaining assets of the special needs trust, the remaining assets of the trust are treated as part of the beneficiary's estate, subject to Medi-Cal reimbursement in the same manner as any other assets of an estate. Thus, the Law

Revision Commission comment leads to the same construction of the statutes as the plain language of the statutes.

This construction of the statutes also comports with sound public policy. Special needs trusts cannot be used to shelter excessive assets, because the probate court will approve only the amount that appears reasonably necessary to meet the special needs of the incompetent person. Both the federal and state Legislatures have determined that distributions from estates to adult disabled children should be exempt from Medi-Cal reimbursement claims because enforcement of such claims would likely result in hardship. We can discern no reason that the remaining assets of a court-approved special needs trust should be treated differently than any other assets of an estate.

■ We conclude that, upon the death of a Medi-Cal recipient, the Department may not be reimbursed from the remaining assets of a special needs trust distributed to an adult disabled child of the Medi-Cal recipient. Because all of the remaining assets of Hatcher's special need trust were distributed to Arnold, Hatcher's adult disabled child, the Department has no right to seek reimbursement from Arnold. The judgment in this case must be reversed.[1]

## DISPOSITION

The judgment is reversed. The trial court is ordered to enter judgment in favor of defendant and appellant Brenda Arnold. Defendant and appellant Brenda Arnold is awarded her costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

---

[1] In light of our conclusion that the judgment must be reversed on the ground of the exemption from reimbursement for distributions to an adult disabled child, we do not address Arnold's other grounds for reversal.